## Sparks, Appellant, v. Philadelphia & Camden Railroad Company.

*Railroads—Incorporation—Act of April 4, 1868, P. L. 62—Street railways —Underground railroad—Tunnel—Motive power.*

Under the general railroad Act of April 4, 1868, P. L. 62, a railroad may be constructed in a tunnel entirely under ground, and it may be operated by electricity.

A railroad company may be incorporated under the Act of April 4, 1868, P. L. 62 to construct a railroad entirely under ground in a city to extend from a point near a river for a distance of about one mile under a street and under the river to an interstate boundary line, without any access to or from its railroad in the city, other than at the terminus; and such a railroad may be operated by electricity. A railroad of this kind is not a street railway.

Argued March 22, 1905. Appeal, No. 83, Jan. T., 1905, by plaintiff, from decree of C. P. No. 4, Phila. Co., Dec. T., 1904, No. 1581, dismissing bill in equity in case of Amelia R. Sparks v. Philadelphia & Camden Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

WILLSON, P. J., filed the following opinion :

On September 28, 1904, the defendant company filed articles of association in the office of the secretary of the commonwealth " For the purpose of constructing, maintaining, and operating a railroad for public use in the conveyance of persons and property, under the provisions of an act of the general assembly of the commonwealth of Pennsylvania, entitled ' An act to authorize the formation and regulation of railroad corporations,' approved April 4, 1868, and the acts supplementary thereto." These articles indicated the route of the proposed railroad to be from a point of intersection of Market street and Front street, in the city of Philadelphia, to a point on the boundary line between the states of Pennsylvania and New Jersey, " there connecting with the railroad of any company now organized or hereafter to be organized under the laws of the state of New Jersey." It is further stated in the same articles that the length of the said railroad will be as near as may be one

mile, and that it would be situated entirely within the county of Philadelphia.   There is nothing stated in the articles in regard to the mode of construction of the proposed railroad, nor as to the power which is intended to be used for the propelling of cars, but it is conceded by the defendant, as well as averred by the plaintiff, that the defendant company intends to construct the railroad entirely underground from the point of its beginning to its terminus under the river Delaware, and that the power to be used in propelling cars shall be electricity. Letters patent were duly issued to the defendant, thus completing its incorporation.

After the location of the railroad as aforesaid, the secretary of the defendant corporation gave notice to the complainant that the road of the company as located would pass under her property, and the defendant tendered the complainant a bond for the purpose of covering any damages which might be awarded to her for the construction of the railroad in that manner, which bond she declined to receive; and she alleges that the defendant is without authority of law to construct and operate the proposed railroad in the manner above indicated, and that said location of the railroad constitutes a cloud upon her title.   The bill filed in this case is intended to prevent the construction and operation of the road, as above indicated.

This summary sufficiently sets out the case with which we have to deal.

The right of the plaintiff to challenge the legality of the proposed act of the defendant company cannot be questioned.   It is clearly given by the statute of June 19, 1871, P. L. 1360.   One of the grounds upon which the plaintiff's counsel relies to sustain the plaintiff's claim in the case is that the defendant company proposes to construct a street passenger railway, and that as such railway company, it cannot exercise the power of eminent domain, and by so doing, interfere with or injure the property belonging to the plaintiff.   It must be conceded that if this position is a sound one, the plaintiff's right to the injunction which is asked is established, for the reason that the act of 1868, under which the defendant company is incorporated, was in terms inapplicable to the incorporation of street passenger railway companies.   We do not,

however, think that it can with propriety be held that in any fair interpretation of language the defendant company can be said to be a street passenger railway company. The mere fact that its location embraces, for a short distance the line of a street of the city does not make it so. Such a state of affairs might exist, and does, in point of fact, exist in the case of a railroad designed and operated wholly for general purposes under the act of 1868. The consent of the municipal authorities to such an occupation of the street is, of course, a prerequisite to their lawful occupation, even in such a case. The question as to whether, in a particular instance, a railroad has the character of a street passenger railway depends not so much upon its location as upon its intended use. Street railways are artificial highways, designed to accommodate the inhabitants of municipalities, large or small, to enable them to pass from one portion of their territory to another, and to stop at convenient and frequent points, according to the regulations of the company. Ordinarily they are constructed upon the surface of the streets and in conformity with the grades thereof; they have a local purpose to serve in transmitting passengers from one portion of a city or town to another and over its streets. The fact that tracks of a railroad or railway are laid in and wholly confined to the streets of a city does not, of itself, determine that they are the tracks of a street passenger railway company. In our own city there are corporations which occupy streets of the city, in whole or in part, and whose location does not extend beyond the limits of the city, which were incorporated under the act of 1868, and which it would be a wild stretch of imagination to describe as street passenger railways, as, for example, the River Front Railroad Company.

The road which the defendant desires to construct, while its location is in the line of Front street for a short distance, swerves therefrom under the plaintiff's property, crosses Delaware avenue and runs out under the bed of the river to the line of the division between the states of Pennsylvania and New Jersey. There will be no access to or exit from the railroad within the limits of the city of Philadelphia, excepting at the point of terminus or beginning at Front and Market streets; no passenger can take a train there and be transported to any other point within the city limits. Besides, the road is intended

for the carriage of property as well as of persons. We fail to see any element in the case that would properly classify the proposed railroad under the head of a street passenger railway company, and no argument to sustain the contrary view can be drawn from the fact that the length of the road, if constructed there, will be only about a mile. It is not the extent of a railroad, but its character, which determines its proper classification.

We find nothing in any case which has been cited to us by the plaintiff's counsel that is at variance with the conclusions expressed above, and therefore we will proceed to consider other points in the case, assuming that the defendant company intends to construct such a railroad as is fully and clearly covered by the act of 1868.

The next question which arises in the case is whether or not under the act of 1868 it is lawful for the defendant company to construct the railroad wholly under the surface of the ground. On this point we find no authority in our own state which will throw much, if any, light upon the subject.

The case of Potts et al. v. Quaker City Elevated Railroad Company, in 161 Pa. 396, although apparently relied upon with a great deal of confidence by the learned counsel of the plaintiff, does not seem to us to be applicable to the case in hand. There the court had before it a corporation that was incorporated under the act of 1868, but which was attempting, in the exercise of its franchises, to construct an elevated street passenger railway in various streets of the city; and it was held that the city could not give its consent to such a company to build and operate such a railroad; and that that corporation had no right to elevate or depress its tracks, under the provisions of the Act of May 31, 1887, P. L, 275, inasmuch as it had no right of way on the surface.

We do not find any express legislative grant of authority to any duly organized corporation to locate and construct a railroad under ground, and while we regard the present question as the most serious and doubtful one in the case, we are not satisfied that we ought to regard the defendant as without a franchise to construct a railroad under ground, because there is no such affirmative and positive statutory power given. It is doubtless true that, when the act of 1868 was enacted, such a thing as a

railroad wholly underneath the surface was not only unknown, but probably not contemplated as a possibility. At the same time, even then it was by no means beyond the knowledge of the legislature or outside of common experience that portions of railroads were, and, as a matter of necessity, must be constructed under the surface of the ground to a greater or less extent. Tunnels were a common device in railroad construction, as, indeed, were bridges across rivers and bodies of water, and neither one or the other of these devices needed specifically to be mentioned in a statute, in order to confer upon a corporation created under its terms the right to build tunnels or bridges. There is nothing prohibitive or affirmative in the expressed language of the statute which defines how a railroad must be built with reference to the surface of the ground on the line of which it is located. The statute seems to have been wisely framed in such a way as to allow for the development of invention and intelligence and of the use of methods and devices which greater experience and more expert knowledge should make expedient and convenient. To hold that nothing could be used by a railroad company incorporated under the act of 1868, or the general railroad law of 1849, in the way of plans or appliances, excepting such as were in vogue at the time when those statutes were enacted, would hardly be regarded as a reasonable or proper view to adopt. Such a construction would bring about a condition of things like a return to mediæval life. The use of elevated and underground constructions has now become common. Without any special legislative authority, of which we have knowledge, the Pennsylvania Railroad Company and the Reading Railway Terminal Company have built elevated structures for a considerable distance within our city limits, and hardly anyone would dispute the statement that if all the railroads coming into our city were carried underneath the surface, even across the entire limits of the city, there would be great gain to the public, and no damage to private individuals which could not be amply compensated in damages. In other cities, as is a matter of common information, underground railroads have been and are being constructed of considerable extent and greatly to the convenience and advantage of the communities where they exist, and of the general traveling public. We are not disposed to limit the force of the act of

1868 in so far as to hold that a corporation created under it is necessarily obliged to construct its railroad upon the surface of the ground, and that it could not adopt that mode of construction which would do away largely, if not entirely, with the discomfort and inconvenience of having tracks laid upon the surface of the streets either longitudinally or crosswise.

Upon this particular point we must therefore conclude that the plaintiff has failed to establish a ground for the interference of a court of equity.

One question remains, and that is whether or not the defendant company has a right to use electricity as the power for drawing or propelling cars along the tracks of its railroad. A good deal of what has been said under the previous head of this opinion, is applicable to the present question. There is nothing in the act of 1868 which expressly requires that steam power shall be used in the running of cars upon railroad tracks, and although, as in the case of Potts v. Quaker City Elevated R. R. Company, 161 Pa. 396, it can be found in some cases that the courts have assumed and stated that the statute referred to related to steam railroads, we do not understand that it was intended to be decided that only steam could be used as a motive power. Undoubtedly in 1868 steam was the motive power exclusively used on railroads. Great progress, however, has since been made in scientific discovery and mechanical inventions, and other methods of propulsion are now and have been for a considerable period of time, in common use; they have proved to be of great practical service in mitigation of nuisances and in the effective operation of public conveyances. Of these, electricity may be regarded as a signal instance. This subtle agent is more and more, in point of fact, coming into use on the railroads of the country; and no doubt many practical mechanics and engineers look forward to a day when it will, to a large degree, supplant steam as the motive power upon the railroads of the world.

In the absence of any positive requirement that steam must be used as the motive power upon the defendant's railroad, we think courts would be altogether out of sympathy with the progress of events, and needlessly obstructive to public convenience, if they should hold that railroad companies could not adapt themselves to changing circumstances and better

methods in such matters without new and express legislative grant.

Though it was not the point of the case, and therefore was not ruled upon, the same thought seems to have been in the mind of our Supreme Court when the case of Reeves v. Philadelphia Traction Company, 152 Pa. 153, was decided. With reference to substantially the same position which we have just before expressed, it was said by MITCHELL, J., " We do not, however, find it necessary to pass upon this question in the present case, and we refer to it only to avoid the possible implication that we deemed it untenable."

For such reasons as we have thrown out in this opinion, we are of the judgment that the defendant company cannot be enjoined against the construction of its proposed railroad because it intends to use electricity as a motive power. In this connection we might also suggest that this question is one which does not properly arise at the present time, and that it is connected with the operation rather than the construction of the road in question.

In conclusion, we ought to state that the views that we entertain, and have expressed in this case, are to be taken in connection with the proposition that the defendant, before it can lawfully construct its road, must obtain the consent of the municipal authorities for the occupation of the line of any street under which the road is to be constructed. The absence of such municipal consent, however, is not averred in the bill and is not one of the grounds upon which the plaintiff asks relief, and although we regard it as we have just stated, as essential, before the defendant company can proceed with its work of construction, we do not think the absence of such consent can at the present time be invoked by the plaintiff as the ground for obtaining the injunction desired. For the reasons which we have stated the injunction must be refused and the bill must be dismissed with costs.

*Error assigned* was the decree dismissing the bill.

*George L. Crawford*, of *Crawford & Loughlin*, for appellant.— The purpose of the defendant is to construct and operate a street railway, which includes elevated, surface and subway railways. Its location is entirely within the city limits: El-

liott on Roads and Streets, 732; Potts v. Quaker City Elevated Railroad Co., 2 Pa. Dist. Rep. 200 ; Collins v. Northeastern Elevated R. R. Co., 2 Pa. Dist. Rep. 417.

The fact that the present corporation is designed to carry both passengers and freight is immaterial : Baldwin on American Railroad Law, 1904 edition, page 159; Kincaid v. R. R. Co., 25 Pa. C. C. Rep. 545.

It is still a passenger railway company, although it may run over its own property and not within the bounds of the public highway: Nellis on Surface Railroads, page 2; Kincaid v. Mahoning Valley R. R. Co., 25 Pa. C. C. Rep. 545.

A power of a corporation by its charter to construct a street railway gives it no authority to construct a steam railroad : S. & N. Alabama Ry. Co. v. Highland Avenue, etc., Ry. Co., 119 Ala. 105 (24 So. Repr. 114); Phila. v. R. R. Co., 19 Phila. 507; Kincaid v. R. R. Co., 25 Pa. C. C. Rep. 545.

It is submitted that the only method of incorporating the present company would be as a street passenger railway company under the act of 1901 and supplements.

The Appeal of the Western Penna. R. R. Co., 99 Pa. 155, was that of a specially chartered street railway held bound by the act of 1849 as applied to all railroad and railway charters. Volmer's Appeal, 115 Pa. 166, was the case of an existing railroad under a charter of 1833, and the question was merely the extent of its power to construct branches. Twelfth St. Market Co. v. P. & R. Terminal R. R. Co., 142 Pa. 580, was the case of a railroad chartered under the act of 1868 and with the consent of the city given, and the right to elevate or depress under the Act of May 31, 1887, P. L. 575, upon the question of its right to condemn a corporation's market property. Same case reported in 28 W. N. C. 111. Heilman v. Ry. Co., 180 Pa. 627, was the case of a street railway with no right of eminent domain, which was not enjoined because its work had been completed. Williamsport Pass. Ry. Co.'s Appeal, 120 Pa. 1, was the case of a street railway incorporated in 1863 without the consent of councils, which it proposed to extend in 1887, the court holding it did not require the consent of councils under the constitution of 1874 or other statutes, having not accepted the constitution. Philadelphia v. McManes, 175 Pa. 28, simply decided that the right of the park commissioners to give the

local consent necessary under the Street Railway Act of May 14, 1889, P. L. 211, existed—they had that authority under special statutes applying to those commissioners.    Northern Cent. Ry. Co. v. Electric Ry. Co., 177 Pa. 142, was the case of a street railway company under that act, in which the court held that it had no right to cross a steam railroad without its consent where its roadway is not crossed by a public highway.    Harriott Avenue, 24 Pa. Superior Ct. 597, was simply a question whether assessments of benefits against a street railway for change of grade of the street upon which it was located could be made, and the court decided that they could not.

In City of Phila. v. P. & R. R. R. Co., 19 Phila. 507, Judge THAYER quoted the cases showing that any corporate right must be clearly expressed.    A doubtful right does not exist. Duncan v. Penna. R. R. Co., 94 Pa. 435, was the case of the Filbert Street Elevated Road, which was authorized under an express act of 1874 (see page 437), and having the consent of the local authorities.    McAboy's Appeal, 107 Pa. 548, was the case in which certain express acts of 1868 and 1874, not applicable to the present case, authorized the P. & C. R. Co. to build a short elevated branch in Pittsburg with the consent of its councils.    Scranton, etc., Traction Co. v. Canal Co., 1 Pa. Superior Ct. 409, was the case of a traction company with the consent of the local authorities crossing a steam road at grade, and the question was how far it was controlled under the Act of June 19, 1871, P. L. 1360, giving courts of equity the duty of supervising grade crossings.    Penna. R. R. Co's Appeal, 116 Pa. 55, simply raised the question of equitable control of grade crossings under that act, and holding under the act of 1868 the right to construct a branch existed before completion of the main line.    Rafferty v. Traction Co., 147 Pa. 579, is the case of a street passenger railway claiming under the act of 1887 authority to lay a cable track where a horse-car track is authorized to be laid.

*Morris Wolf*, with him *Horace Stern*, for appellee.—The only essentials for incorporation under the act of 1868 are that the purpose of the company to be formed shall be to construct (1) a railroad, (2) for public use, (3) in the conveyance of persons and property.

There is no suggestion that the railroad shall be of any particular length, that it shall run in or through any particular governmental district, that it shall run only on, or only above, or only below the surface of the land which it crosses, or that it shall use any particular kind of motive power. The word "railroad" includes any road of rails: Stillwater, etc., Street Ry. Co. v. Boston, etc., R. R. Co., 171 N. Y. 589 (64 N. E. Repr. 511).

The complainant's first objection is to the fact that the railroad is not a lengthy one. But the shortness of a railroad is immaterial: Volmer's App., 115 Pa. 166; Twelfth St. Market Co. v. Phila. & Reading Terminal R. R. Co., 142 Pa. 580.

There is no provision in the act of 1868 limiting its application to railroads not wholly within a city or borough, and as shown before, at least two important railroads wholly within the limits of Philadelphia, viz.: The Schuykill River East Side Railroad Company and the Philadelphia & Reading Terminal Company, have been held properly incorporated under the act of 1868: National Docks Ry. Co. v. Central R. R. of N. J., 32 N. J. Eq. 755; Lieberman v. Chicago, etc., R. R. Co., 141 Ill. 140 (30 N. E. Repr. 544).

The defendant's road, as contemplated, is not a street passenger railway: Harriott Ave., 24 Pa. Superior Ct. 597; Grand Rapids, etc., R. R., Co. v. Heisel, 38 Mich. 62; In re South Beach R. R. Co., 119 N. Y. 141 (23 N. E. Repr. 486); Lockhart v. Ry. Co., 139 Pa. 419.

The difference in the purpose of street railways and of railroads necessitates a difference in their mode of construction and operation. The street railway, intended to serve the public in its passage over the streets from one part of a town or city to another, necessarily confines its route to the streets: Phila. v. McManes, 175 Pa. 28; Northern Cent. Ry. Co. v. Harrisburg, etc., Electric Ry. Co., 177 Pa. 142; Du Bois Traction Pass. Ry. Co. v. Buffalo, etc., Ry. Co., 10 Pa. C. C. Rep. 401; Potts v. Quaker City Elevated R. R. Co., 161 Pa. 396; Com. v. Ry. Co., 161 Pa. 409; In re New York District Ry. Co., 107 N. Y. 42 (14 N. E. Repr. 187); Phila., etc., R. R. Co. v. Ry. Co., 206 Pa. 343.

A railroad is as much a railroad when it runs under the ground as when it runs over the ground: Lieberman v. Chicago,

etc., R. R. Co., 141 Ill. 140 (30 N. E. Repr. 544); Schofield v. Penna. Schuylkill Val. R. R. Co., 12 Pa. C. C. Rep. 122; Bolton v. Transfer Co., 32 Am. & Eng. R. R. Cases, 256; Duncan v. R. R. Co., 94 Pa. 435; McAboy's App., 107 Pa. 548; Scranton, etc., Traction Co. v. Delaware & Hudson Canal Co., 1 Pa. Superior Ct. 409; New York & Erie R. R. Co. v. Young, 33 Pa. 175; Struthers v. Ry. Co., 87 Pa. 282; Price v. Penna. R. R. Co., 209 Pa. 81; Bishop v. North, 11 M. & W. 418; Great Western Ry. Co. v. Cefn Cribbwr Brick Co., L. R. 2 Ch. [1894] 157.

Electricity may be used as a motive power: Williams v. Electric Street Ry. Co., 41 Fed. Repr. 556; Malott v. Collinsville, etc., R. R. Co., 108 Fed. Repr. 313; Millvale Borough v. Ry. Co., 131 Pa. 1; Gaw v. Bristol, etc., Ry. Co. 196 Pa. 442; Griesemer v. Oley Valley R. R. Co., 13 Pa. Dist. Rep. 225; Lonergan v. Ry. Co., 3 American Electrical Cases, 273.

PER CURIAM, May 15, 1905:

The judgment is affirmed on the opinion of the learned president judge of the common pleas.